Day, J.
The facts necessary to be stated to understand the question decided in this case are as follows :
*On the 8th day of May, 1860, the plaintiff brought an action against the defendant, in the court of common pleas for the-county of Gallia, under the provisions of the “ act to provide for the collection of claims against steamboats and other water-craft, and authorizing proceedings against the same by name,” to recover the damages sustained by the plaintiff in the sinking and loss of a flat-boat and load of coal, wrongfully occasioned by said steamboat on the Ohio river.
The proceedings in the case were conducted as required by the statute ; but there was no allegation in the petition, or any of the proceedings that said steamboat was “ of twenty tons burden and upward.”
On the trial of the issues joined by the pleadings, the plaintiff recovered a verdict for $386.80.
Thereupon, the defendant moved to arrest the judgment, because there was no averment in the petition that said steamboat was of twenty tons burden and upward; which motion was overruled, and judgment was entered upon the verdict.
On petition in error, in the district court, this judgment was reversed, and the case was remanded to 'the court of common pleas for further proceedings.
At the October term of said court, 1863, the cause was again tried. The issues were found in favor of the plaintiff, and his damages were assessed at $386.80.
The defendant again filed a motion in arrest of judgment, “because said petition does not contain an aveiunent that said deiendant is a steamboat over the tonnage of twenty tons.”
The court sustained this motion and arrested judgment
The case being thus terminated, this petition in error is brought to reverse the final action of the court of common pleas.
Actions against steamboats and other water-crafts by name rest *392 solely upon statutory provisions; and it is, doubtless, necessary to allege in the proceedings against them, all the facts required by the statute to bring the case within this extraordinary jurisdiction.
Upon this principle, it would seem from the record, the court below held that it was essential to its jurisdiction under the statute, that the petition should show that the steamboat *sued was “ of twenty tons burden and upward and, for want of this averment, arrested judgment upon the issues found for the plaintiff, and dismissed his suit.
Whether the court erred in this holding, depends on what is the proper construction of the 1st section of the act upon which the action was founded. The act was passed February 26, 1840; and the 1st section, as amended March 10, 1860, reads as follows:
“ That all steamboats and other water-crafts, of twenty tons burden and upward, navigating the waters within or bordering upon this state, shall be liable, and such liability shall be a lien thereon, for all debts contracted on account thereof, by the master, owner, steward, consignee, or other agent, for materials, supplies, or labor in the building, repairing, furnishing, or equipping the same, or for insurance, or due for wharfage, and also for damages arising out of any contract for the transportation of goods or persons, or for injuries done to persons or property by such craft, or for damages or injury done by the captain, mate, or other officer thereof, or by any person under the order or sanction of either of them to any person who may be a passenger or hand on such steamboat or other water-craft, at the time of the infliction of such damage or injury.”
The only change in the original section, for which this was substituted, was made by inserting therein the words here italicised for the purpose only of showing, without repeating, the language of each section.
In the following sections, authority is given to proceed against the craft by name, and the mode of procedure is prescribed.
It is clear, from the amended section, that the legislature intended to limit the special remedy thereby given against water-crafts other than steamboats, to those of twenty tons burden and upward ; but it is not so clear that such was the intention as to steamboats. There is not the same reason for exempting the latter as there is the former, from the operation of the statute.
The statute was doubtless passed (in aid of trade and commerce upon the waters within and bordering upon this state) *tc *393 promote the building of navigable crafts, and to enable them, in their trips from port to port, on the one hand, to procure credit for the various purposes named in the statute; and, on the other, to be liable for other purposes therein mentioned, although the owners of such crafts may be unknown or irresponsible.
The smaller water-crafts are used less in commerce, and seldom in such navigation as takes them at a distance from their owners. But this is rarely true in regard to steamboats; and, moreover, very few steamboats, in comparison with other crafts, come within the tonnage limitation provided in the amended section.
Again, if the legislature intended the tonnage limitation to apply to steamboats as well as to other water-crafts, why was the word “ all ” inserted before the word “ steamboats,” in the first line of the amended section ? If that was their meaning, the word is useless, and its insertion served no purpose; but if the word be construed to exempt steamboats from the tonnage 'limitation applied to other water-crafts, so as to render all steamboats liable to the provisions of the act, without reference to their tonnage, we discover a substantial reason why the word was inserted, and that a purpose is thereby subserved in accordance with the policy of the statute, and in harmony with both the original and amended sections.
But for the punctuation as it stands, there could be little doubt but that this was the meaning of the legislature. Courts, will, however, in the construction of statutes, for the purpose of arriving at the real meaning and. intention of the law-makers, disregard the punctuation, or repunctuate, if need be, to render the true meaning of the statute. 10 Ohio St. 316; Bouv. Law Dic. 347, 402.
If the punctuation in the first line followed the word “ steamboats,” the purpose for which the word “ all ” was inserted in the amendment, as well as the true meaning of the section, would be more obvious.
But we think all doubt, as to the proper construction of this section, may be settled by the application of the rule that, in the construction of revised or amended statutes, the original statute will not be regarded as changed further than *clearly appears to have been intended-by the legislature. 2 Hill, 380.
The statute, before the amendment, had given a remedy against steamboats and other water-crafts by name without reference to their tonnage. The amendment clearly limits this liability of water-crafts other than steamboats, to those of twenty tons burden *394 and upward; but it does not appear clearly that the same change was intended to be applied to steamboats; on the contrary, the amendment is fairly, if not clearly, susceptible of directly the opposite construction; and is, therefore, a proper case for the application of the foregoing rule.
It follows, that actions against steamboats are not limited to-those of twenty tons burden and upward; and that, therefore, it is-unnecessary to allege in the proceedings against them, that they' are of that tonnage.
The court of common pleas, therefore, erred in holding that', such averment in the petition was essential, and in arresting judgment because the petition contained no such allegation.
The judgment of that court must be reversed; and, under the-statute, j udgment rendered in this court for the plaintiff, for the amount found in his favor on the trial below, with interest from that date.
Scott, C. J., and White, Welch, and Brinkerhoee, JJ., concurred.